*Drew & Burbank*, for the defendants.

---

THOMAS HERSEY, *Complainant, versus* STEPHEN PACK-ARD *& al.*

Ths defendants' mill-dam, erected in 1796, was repaired in 1831 and rebuilt with stone in 1839. In 1841, the plaintiff demanded damages for past and future flowage, and the parties submitted the demand to referees, who were to "determine the yearly damage * * for the term of ten years and no longer," their report to be binding for that term. The referees determined that the plaintiff recover $10 for damages which occurred prior to Jan., 1841, and $5 annually for ten years, unless the defendants should sooner dispose of or lower their dam. The award was entered in the District Court and judgment rendered thereon. The defendants paid the damages in accordance with the award. In the trial of a complaint for flowage,

commenced in 1865, the defendants pleaded in bar a prescriptive right to flow without paying damages : — *Held,*

That the judgment upon the award devested the defendants of any prescriptive right they may have acquired prior thereto to flow the plaintiff's land; — BARROWS, J., *dissented.*

ON REPORT.

COMPLAINT FOR FLOWAGE.

The defendants pleaded in bar a prescriptive right to maintain their dam and flow the plaintiff's land without any compensation.

The plaintiff's title to the land flowed was admitted, as was also the defendants' title to the mills and dam; and it was further admitted that the defendants derived their title from one Brett, who owned the mills and erected the first dam in 1796.

On the part of the defendants, it appeared among other things, that Stephen Packard, one of the defendants, in May, 1819, purchased the mills and dam and had occupied them ever since; that the dam was old, but continued to be used with some repairs until 1839, when, a part of it having been carried away, it was rebuilt with stone; that a mark was made upon a post of the mill indicating the height of the old dam and that the stone dam was built "just as high as the old dam and no higher;" that the old dam was leaky for several years before it went away, and the water flowed over it some part of the year, but it did not keep the water up quite so long each year as the new dam; and that the plaintiff and Stephen Packard submitted certain questions touching the premises to referees.

The demand, submission and award put into the case by the plaintiff were as follows :

" Thomas Hersey demands of Stephen Packard the sum of fifty dollars damages, which he has sustained by reason of having his land flowed with water. For that the said Packard for more than six years last past, has been the owner and occupant of a certain mill privilege and dam across the stream leading from Little Wilson Pond to Great Wilson

Pond, in Minot, thereby flowing said Hersey's land situated in said Minot, and rendering a portion of the same useless and of no value to the owner for the last six years, during which time the said Hersey has been the owner of the land.

" He also demands the sum of $30 damages for the coming year, if the said Packard shall continue to flow the same, or in that proportion, so long as he shall keep said dam at its present height.

(Signed) " Thomas Hersey."

" Know all men, that I, Thomas Hersey of Minot, in said county of Cumberland, and Stephen Packard of Minot aforesaid, have agreed to submit the demand made by the said Thomas Hersey against the said Packard, which is hereunto annexed, to the determination of Daniel Briggs, Nathan L. Woodbury and Samuel Freeman, Esquires, the report of whom, or the major part of whom, being made, as may be, to any District Court to be holden in and for said county of Cumberland, judgment therein to be final; and, if either party shall neglect to appear before the referees after proper notice * * * the referees shall have power to proceed *ex parte.*

" And it is further agreed, that the referees shall determine the yearly damage, if any they find, for the term of ten years and no longer; and their report shall be binding on the parties for said term of ten years, unless the said Packard shall sooner dispose of said mill." The submission was signed by the parties, but not acknowledged before a justice of the peace.

" We the subscribers, a majority of the referees appointed by the foregoing submission, having duly notified the parties therein named, met at the house of Stephen Packard, this thirtieth day of December, 1841, and, having heard their several allegations, pleas and proofs, and maturely considered the same, do award and determine that the said Thomas Hersey do recover of the said Stephen Packard the sum of ten dollars damages, for the flowage submitted to us previous to the 21st day of January, 1841. And also,

that he do recover five dollars yearly damages for each year subsequent to the 21st day of January, 1841, for the term of ten years, unless said Packard shall sooner dispose of said dam and mill, and provided said Packard shall continue said dam at its present height. The yearly damage, after January 21st, 1841, to cease, whenever said Packard shall lower his dam."

The award contained a provision in regard to costs, — recited that the other referee participated in all their deliberations, but, not concurring with the others, did not sign the award, — was signed by Briggs and Freeman, entered in District Court, in Portland, at the March term, 1842, accepted and judgment rendered thereon.

It also appeared, on the part of the defendants, that Packard never paid any damage for flowage, until after the award; that he then paid according to the terms of the award for ten years, but nothing thereafter; that the plaintiff did not urge before the referees that the dam had been raised, but that his land had been flowed by tightening the dam; that there had been no change in the dam since the award nor since it was built; that there was a log across the stream in the narrows above the mill-pond and below plaintiff's land, prior to 1839, and lay there several years before the stone dam was built, and another just above the former; never discovered that flowage was higher after new dam was built; saw-mill flume has not been raised since 1819; that plaintiff claimed damages soon after new dam was built; the fact of the obstructions was brought to the knowledge of the referees; that the old dam flowed other lands as high as the new, and the new no higher than the old; from 1831 to 1839 old dam was tighter than before; that, during summer, not water enough to carry the mill; flumes were leaky, and same since 1839; that the water kept above waste-way from twenty-five to forty days.

Defendants put in actual admeasurements of waste-way, flume and dam.

On the part of the plaintiff, and witnesses called by him, it appeared that he helped to cut the hay upon the premises in 1827, which are now flowed; that he never saw any water on same land until April, 1832; that he then talked with Packard about damages; that the water has killed 1000 trees and flowed 25 acres of land, so that nothing will grow upon it; that, before the referees, evidence was introduced showing the water was several feet higher than it had been before and that the dam had been raised; that the land was not flowed until after the repair of the dam in 1831; and that, prior to 1831, plaintiff's meadow was never flowed; water averaged 22 inches deep in meadow, in April, 1866.

The full Court was to render such judgment as the law and evidence required.

*C. Record*, for the plaintiff.

*S. & J. W. May*, for the defendants.

WALTON, J. — The only fact in dispute between these parties is whether the new dam, built by the defendant, (Packard,) in 1839, flowed the plaintiff's land higher than he had then acquired a prescriptive right to flow it, without the payment of damages; and this fact has been once litigated between the parties and decided against the defendant. The defendant testifies that soon after the dam was built the plaintiff claimed damages. The defendant claimed that he had a prescriptive right to flow without the payment of damages. The plaintiff claimed that the new dam flowed his land higher than it had ever been flowed before. They agreed to submit the question to arbitration. Intelligent referees were selected and a hearing had. This was soon after the new dam was built, when it must have been much easier to ascertain whether it flowed the plaintiff's land higher than any previous dam had flowed it, than it is now after the lapse of more than a quarter of a century. The referees awarded the plaintiff damages at the rate of five dollars per annum from the time the new dam was complet-

ed. Their report was accepted by the District Court and judgment rendered thereon. If there are any defects in the submission or record of the judgment, they are such as relate to matters of form only. There is nothing to indicate that the case was not fairly tried and honestly decided. The judgment still remains in full force. If liable to be reversed for informalities, it never has been. The defendant, if he did not admit the decision to be just, acquiesced in it, and for ten years paid the annual damages thereby awarded. He now claims to have the identical question that was then tried, and decided against him, tried over again. He now claims precisely what he then claimed, that the new dam, built in 1839, flowed no higher than he had then acquired a prescriptive right to flow without the payment of damages. This was his only defence then, it is his only defence now. Is it open to him? Clearly not. The defendant has had his day in Court; he has had his right to flow the plaintiff's land without payment of damages once passed upon; the decision was against him; he expressly agreed that the judgment should be final; and to allow him to again try the same question, would not only be contrary to the plainest principles of right, as between man and man, but contrary to well settled rules of law. The authorities in support of this conclusion are too familiar to require citation.

This case is not distinguishable in principle from the case of *Adams* v. *Pearson*, 7 Pick., 341, and the circumstances of the two cases are strikingly alike. That like this was a complaint for flowage. In that case as in this the defendant claimed a prescriptive right to flow the plaintiff's land. There as here the plaintiff's right to recover damages had been submitted to referees, and decided in his favor. The report had been returned to and accepted by the Court of Common Pleas, and judgment rendered thereon, as was done in this case. The defendant claimed to have the question tried over again; the plaintiff claimed that he was estopped by the former adjudication. The Court held that, it having been settled and adjudged on the former complaint that the

plaintiff was entitled to damages, the defendant could not be allowed to aver anything inconsistent with that adjudication, otherwise there would be no end to controversies. And, speaking of the reference, the Court said that although the damages were ascertained by referees mutually chosen by the parties, their report was equivalent to a verdict, and judgment thereon as binding as a judgment on the verdict of a jury.

The defendant contends that if, before submitting the question to arbitration, he had actually acquired a prescriptive right to flow the plaintiff's land, without the payment of damages, nothing short of a deed of conveyance or its equivalent would devest him of the right; and he relies upon the case of *School District* v. *Benson*, 31 Maine, 381, in which it was held that the title to real estate, obtained by disseizin, could not be devested by a parol abandonment or relinquishment, in support of his proposition. But the cases are not analogous; for, inasmuch as the right to flow land for mill purposes is given by statute, and the owner has simply a pecuniary claim for compensation, it has been held that such claim, like any other pecuniary claim, may be waived, satisfied or extinguished by parol. *Snow* v. *Moses*, 53 Maine, 546, and authorities there cited. But there is another complete answer to the objection, and that is, that the judgment of a court of record is as effectual to devest a party of any interest he may have in real estate as a deed of conveyance.

There has been no change in the dam since the award of the referees, nor since it was built. The defendant himself so testifies. The flowage is the same now as it was at the time of the former adjudication, and if the plaintiff was entitled to damages then, he is now; for there is no pretence that the defendant has acquired a right to flow without the payment of damages since that time, he having paid the annual damages till 1852. He claims now precisely what he claimed then; namely, that the new dam, built by him in 1839, flowed the plaintiff's land no higher than he had

then acquired a prescriptive right to flow it without the payment of damages. He resisted the plaintiff's claim to damages upon that ground then, he resists it upon precisely the same ground now. His counsel endeavors to avoid the effect of the former adjudication, not upon the ground that the plaintiff's land is flowed less now than it was then; but upon the ground that there were informalities in the proceedings; that such a claim for damages was not a proper matter for arbitration; that the judgment would not have the effect to devest the defendant of his right to flow without the payment of damages, if he had then actually acquired such a right; that nothing short of a deed of conveyance would have such effect. None of these grounds are in our judgment tenable.

Our conclusion, therefore, is that the plaintiff is entitled to recover, and that a committee should be appointed to appraise the damages, as provided in c. 91, § 9, of the R. S. of 1857.

APPLETON, C. J., CUTTING, DICKERSON and DANFORTH, JJ., concurred.

BARROWS, J., delivered the following dissenting opinion.

The testimony of the respondents shows satisfactorily that, for more than twenty years prior to 1839, they and their grantors had maintained a dam on the site which they now occupy, at a certain height, without the payment of damages, claiming the right so to do; that, at that time, the dam here complained of was built to replace the other, and of the same height, care being taken before the remains of the old dam were removed, to mark its height permanently, and build to that height and no higher; that it has so continued to the present time, and under such circumstances as clearly to establish the prescriptive right set up in the defence, unless this position is controlled by the testimony for the complainant, or unless the respondents are estopped by the report of the arbitrators from asserting a prescriptive right.

Hersey *v.* Packard.

Although, at first, the testimony offered by the complainant seems conflicting and inconsistent with the view of the case which we have taken, as presented by the respondents' testimony, yet, on examination, it may not only be reconciled with, but in part confirms it. No one of his witnesses testifies to any increased height or other change in the dam which would tend to increase the flowage, but their testimony all relates to the actual flow upon the land. Such testimony, in the absence of admeasurements and of any apparent investigation of the cause of increase, if any, is in a great degree a matter of opinion, and relating, as it does, to times past, with nothing to fix in the memory the actual depth of the water at different times, so as to compare the depth at one time with that at another, must necessarily be uncertain and unsatisfactory, and fails to overcome that which rests upon actual admeasurements of the dam.

We are satisfied that the different degrees of flowing testified to, making even small allowances for inaccuracy of memory and judgment, may be readily explained by obstructions in the stream other than the dam, the variation of the seasons, the different methods of using the water at different times, and the fact, that sometimes the dam was not so tight as at others.

The first two causes named, of course, cannot affect the position of the respondents, as established by their testimony. That the last two causes should not affect the respondents' right, is clearly established by the cases of *Cowell* v. *Thayer*, 5 Metcalf, 253, and *Ray* v. *Fletcher*, 12 Cush., 200, which, in my judgment, rest upon sound principles.

It seems not improbable that a deviation from these principles produced the award of the arbitrators, which makes the principal difficulty in this case. Aside from this award, I should not hesitate to say that the prescriptive right of the respondents is clearly proved to have existed in 1839, and that the stone dam then built, to replace the one which went away, had no greater efficient height than its predecessor, which is shown to have been more than ordinarily loose and

leaky. By the award of two of the arbitrators, (the third dissenting,) made December 30, 1841, and accepted at the March term of the District. Court, 1842, the respondents were required to pay five dollars a year, for ten years, to the complainant for flowing his land by means of the dam erected in 1839, which continues unchanged to the present time, and it remains to be determined whether the award shall have the effect to estop the respondents from asserting their prescriptive right to flow; which, as we have heretofore seen, aside from the award, seems clearly established, commencing as far back as 1796. It is manifest that five dollars a year would be no compensation for the flowage of twenty-five acres and killing a thousand trees, which the complainant testifies to. It seems certain, from the amount awarded, that, if the respondents' prescriptive right to flow came in question at all before the arbitrators, they affirmed it to a certain extent by their decision, and it is not improbable that the increased actual flowing, for which the arbitrators awarded this five dollars annual payment, was caused by the increased tightness of the new dam, and perhaps, different and more economical management of the water, neither of which causes, as we have seen above, should have affected the award. The award, then, viewed merely as a matter of evidence, would not disturb the conclusion above stated, based upon the positive testimony of the respondents, as to the height of the dam of 1839, as compared with the one preceding it. Does it work an estoppel? Are the respondents precluded by it from putting the truth in evidence? Yes; if the respondents have had their day in Court and the question they seek to raise here has been decided against them by a competent tribunal; if not; no. To work an estoppel, the case must have been decided by a tribunal having jurisdiction of the parties and of the subject matter.

The agreement for arbitration here presents some peculiarities which are worthy of notice when the judgment upon the award is presented as the ground of an estoppel. It is provided by it, that "the referees shall determine the

yearly damage, if any they find, for the term of ten years, and no longer, and their report shall be binding on the parties for said term of ten years, unless the said Packard shall sooner dispose of said mill."

The ten years expired in 1852. The five dollars per annum was duly paid during the ten years, and nothing has been paid since. It might, perhaps, well be doubted whether, under such stipulations as to the length of time during which the award should bind the parties, it could be invoked as an estoppel after the expiration of that time. But there are other and graver objections to giving it that effect. The agreement for arbitration, though not acknowledged before a justice of the peace, as it ought regularly to have been, is substantially in the form prescribed in chap. 138, R. S. of 1841, which authorizes the submission to one or more referees of controversies which may be the subject of a personal action.

Even under the Massachusetts statute of July 7, 1786, authorizing the submission to referees of any "dispute of what nature soever," the Court, in *Fowler* v. *Bigelow*, 8 Mass., 1, showed their disinclination to permit such a tribunal to pass upon titles to real estate, by holding that referees, thus appointed, had no jurisdiction of questions involving such titles. And the Legislature, both in Massachusetts and in this State, afterwards confined such appointments to controversies which may be the subject of a personal action.

It is said that this case is substantially identical with *Adams* v. *Pearson*, 7 Pick., 341. Not so. The judgment which was there held to estop the respondent was upon a regular complaint for flowage before the Court of Common Pleas, referred by rule of Court, the parties specially agreeing on the record that the referees should have all the powers that the Court and jury would if the case were not referred.

The question of the jurisdiction of the tribunal, whose de-

cision was claimed as an estoppel, did not and could not arise in that case.

In *The Proprietors of Fryeburg Canal, in Error,* v. *Frye,* 5 Maine, 38, where the submission was before a justice, it is said by the Court that the judgment is erroneous "if the title to real estate is necessarily involved in this controversy. But it does not appear to us that the title to real estate is affected by the submission." No question arose in that case as to the right of either party in real estate, and the Court accordingly liken it to an action of trespass *quare clausum,* brought before a justice of the peace, where the defendant does not dispute the plaintiff's title, and say, "it is a mere question of damage and not of title." Now, in the case at bar, the respondent's title by prescription to flow the land without the payment of damages, was involved in the controversy before the arbitrators, or it was not. If it was not in controversy, there can be no pretence that the award estops the respondents from asserting that right. If it was in controversy, then, under these decisions, it is plain that arbitrators under the statute can make no binding adjudication upon such a question. Moreover, the submission not having been acknowledged before a justice, the District Court had no jurisdiction to enter up any judgment in the premises. Their jurisdiction, in such cases, depends upon the statute, and must be exercised in conformity with it. Where the want of jurisdiction is, as here, apparent upon the face of the papers, surely the judgment ought not to be allowed to work an estoppel or to devest a party of his title to real estate. The defects in the submission and record are not matters of form only. The groundwork is wanting.

It does not follow that, because, according to *Snow* v. *Moses,* 53 Maine, 546, the owner of the land, as against whom the statute gives a right to flow upon the payment of damages, may waive his mere pecuniary claim and extinguish it by parol, that a mill owner, who is the owner of the prescriptive right to flow land, acquired by more than forty years adverse user, should be held to have aban-

doned that by parol. *His is not* a mere pecuniary claim, but an interest in the land itself, and falls within the rule enunciated in *School District* v. *Benson*, 31 Maine, 381.

The respondents cannot properly be said to have had their day in Court, or a decision of the issue which they seek here to raise, by any tribunal having jurisdiction of the parties and of the subject matter.

Being at liberty, then, to examine their defence by the light of the testimony, and finding the testimony offered by the respondents to be of a character altogether more satisfactory and conclusive than the vague and uncertain inferences to be drawn from that of the complainant, allowing that the witnesses on both sides intend to state the matter truly, I am of opinion that there should be judgment for the respondents.